Mr. Mike Gaines, Chairman Arkansas Post Prison Transfer Board P.O. Box 34085 Little Rock, AR 72203
Dear Mr. Gaines:
This is in response to your request for an opinion regarding the authority of the Arkansas Post Prison Transfer Board with respect to individuals who are returned to the Department of Correction following the revocation of their transfer to community punishment. In your example, a person commits the offense of theft by receiving on or after January 1, 1994. The person is sentenced to the Department of Correction and then is automatically transferred to the supervision of the Department of Community Punishment under the new code provisions. The person violates the terms of his transfer and, following a revocation hearing, the person is returned to the Department of Correction.
You have asked whether, under these circumstances, someone initially subject to automatic transfer:
 (1) must be automatically released in the time set by the Hearing Examiner at the revocation hearing,
 (2) must be automatically transferred in the time set by the Hearing Examiner unless conditions are set as established in Act 555 of 1993 (Sec. 2(a)(2)(ii)), or
 (3) can be treated in a discretionary method as is currently done with parole violators, i.e., the Board can deny the person release until the Board feels that the person will not be a risk to himself or society.
In my opinion, such an individual should be re-transferred to community punishment at the Post Prison Transfer Board's discretion, as provided in your third alternative.
Act 555 of 1993, codified at A.C.A. §§ 16-93-1301 to -1304 (Cum. Supp. 1993), provides the criteria for transfer of inmates to the Community Punishment Program. Section 16-93-1304 addresses the revocation of a transfer. It provides:
 In the event a person transferred under the provision of this subchapter violates the terms or conditions of his transfer, revocation procedures shall follow all legal requirements applicable to parole in §§ 16-93-705 and 16-93-706 and shall be subject to any additional policies, rules, and regulations set by the Post Prison Transfer Board.
Sections 16-93-705 and -706, referred to above, set out the procedures to be followed in connection with the revocation of an individual's parole, but do not go beyond the revocation procedure itself. The issue of when an inmate may be transferred to community punishment for a second time, following the revocation of his initial transfer thereto, is not specifically addressed either in § 16-93-1301 et seq. or in other new or related code provisions. I am reluctant to conclude in favor of either your first or second option in the absence of specific authority for a re-transfer to community punishment in accordance therewith. Thus, it is my opinion that, pending statutory clarification of the issue, an inmate's transfer to community punishment following revocation should be at the discretion of the Post Prison Transfer Board, which exercises extensive authority with respect to all transfers. Of course, such discretion must be exercised in accordance with the policies, rules, and regulations established by the Board.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Catherine Templeton.
Sincerely,
WINSTON BRYANT Attorney General
WB:cyh